**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

_____
                                     :

**JONMOR INVESTMENTS, INC.**        :
**and ARMOUR-ECKRICH MEATS**    :
**LLC,**                                  :
                                     :       **Civil Action No.** _____
          **Plaintiffs,**         :
                                     :
             **v.**               :       **JURY TRIAL DEMANDED**
                                     :
**BOKA RESTAURANT GROUP, LLC,** :
**B. HOSPITALITY CO. and**        :
**BOKA STEAK, LLC.,**              :
                                     :
          **Defendants.**        :
_____ :

## VERIFIED COMPLAINT

        Plaintiffs Jonmor Investments, Inc. and Armour-Eckrich Meats LLC (collectively, "Plaintiffs"), by and through their attorneys, Reed Smith LLP, for their Verified Complaint against Defendants Boka Restaurant Group, LLC, Boka Steak, LLC and B. Hospitality Co. (collectively "Defendants") hereby aver as follows:

## PRELIMINARY STATEMENT

        1.      For nearly 150 years, Plaintiffs (including through their predecessors in interest) have promoted and sold high quality meats and other food products throughout the United States under the ARMOUR® brand. Consumers have come to associate the ARMOUR® brand with those high quality products and, indeed, the ARMOUR® brand has become a famous designation for such products.

- 1 -

2.      In 2013, Defendants asked Plaintiffs to consent to Defendants' proposed use of the ARMOUR name in association with a Chicago steakhouse restaurant that Defendants wished to call ARMOUR & SWIFT.  Defendants admitted that they intended the ARMOUR & SWIFT name to reference Chicago's meatpacking history generally, and to reference and trade upon the history of the ARMOUR® brand, its founder and its associated goodwill in particular.  Plaintiffs refused, noting that such a use of the ARMOUR name would result in consumer confusion and a dilution of Plaintiffs' famous ARMOUR® brand.

3.      Plaintiffs have just discovered that Defendants, knowing of Plaintiffs' rights in the famous ARMOUR® brand and Plaintiffs' objection to any use by Defendants of that mark, intend to open an ARMOUR & SWIFT steakhouse in Chicago in September 2015.  Plaintiffs accordingly bring this action for infringement of Plaintiffs' ARMOUR® trademarks, unfair competition and false designation of origin under the federal Lanham Act, dilution under the federal Lanham Act and under Illinois state law, and violation of the Illinois Deceptive Trade Practices Act. Plaintiffs seek temporary, preliminary and permanent injunctive relief to enjoin Defendants' wrongful conduct, and monetary damages to compensate Plaintiffs for the harm caused by Defendants' deliberate misappropriation of the famous ARMOUR® brand.

**THE PARTIES**

4.      Plaintiff Jonmor Investments, Inc. ("Jonmor") is a Delaware corporation, with its principal place of business at 103 Baynard Building, 3411 Silverside Road, Wilmington, Delaware 19810.

5.      Plaintiff Armour-Eckrich Meats LLC ("Armour-Eckrich") is a Delaware limited liability company, with its principal place of business at 4225 Naperville Road, Suite 600, Lisle, Illinois 60532.

6.     Defendant Boka Restaurant Group, LLC ("BRG") is an Illinois limited liability company with its principal place of business at 820 W. Lake Street, Chicago, Illinois, 60607.

7.     Defendant B. Hospitality Co.  ("B. Hospitality") is a privately held Illinois corporation with its principal place of business at 55 W. Monroe St., Suite 2370, Chicago, IL 60603.

8.     Defendant Boka Steak, LLC ("Boka Steak") is a limited liability company organized under the laws of the state of Illinois, with a principal place of business located at 813 W. Randolph, Suite 201, Chicago, Illinois 60607.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over the federal claims pleaded herein pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendants because, among other things: (a) Defendants maintain physical offices that are accessible to residents of the State of Illinois through which they actively advertise their infringing products and services; (b) Defendants' infringing activity is occurring in this District; (c) Defendants have purposefully availed themselves of the benefits and protections of Illinois law by doing and transacting business in the State of Illinois, including forming their business entities under the laws of the State of Illinois; and (d) Defendants have extensive, systematic and continuous contacts with this forum, including, among other things, through their advertisement and offering of infringing goods and services in this forum.

11.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District and/or because Defendants market and intend to sell their infringing products and services in this District.

- 3 -

## FACTS

### History of the Famous ARMOUR® Brand

12.     For nearly 150 years, the ARMOUR® brand has been synonymous with top quality meat products, as well as other food products and services relating to such products.

13.     Phillip Danforth Armour formed Armour & Company ("Armour") in the late 1800s to sell meats and a variety of other animal products.  In 1884, Armour opened a meat packing plant in Chicago adjacent the Union Stock Yards.  The Armour plant prominently displayed the ARMOUR brand name, as shown in the photograph attached hereto as Exhibit A.

14.     Since its founding, Armour has played a significant role in the U.S. meat industry.  During the Spanish American war, for example, Armour sold 500,000 pounds of beef to the U.S. Army.  By the time of World War II, Armour's operations had expanded to employ approximately a half million people.

15.     Armour has sought, secured and maintained federal trademark protection for its ARMOUR® family of marks since at least the mid-1900s.  Among other things, in June 1956, Armour applied for federal registration of the ARMOUR word mark (the "ARMOUR® Word Mark" or "ARMOUR® Mark") for a wide variety of meat and food products.  That registration issued on December 10, 1957 as U.S. Trademark Registration Ser. No. 655,574, and is currently valid for fresh carcass meats and cuts thereof; cured, corned, dried, canned, and frozen meats; and canned and frozen prepared meat products.  (The ARMOUR® Word Mark is collectively referred to herein, together with other ARMOUR family trademarks, as the "ARMOUR® Marks.")

16.     In 1970, Armour was acquired by Greyhound Corporation.  In 1985, Greyhound sold its meat packing operations and the ARMOUR® Marks to ConAgra Foods, Inc. ("ConAgra").  A copy of Greyhound's assignment of the ARMOUR® Marks to ConAgra was recorded at Reel/Frame 1575/0498 at the U.S. Patent and Trademark Office.  Greyhound retained a shelf-stable meat products

line, and took a license back from ConAgra to allow Greyhound to use certain of the ARMOUR® Marks on those shelf-stable products. Greyhound subsequently sold its shelf-stable meat products line to Pinnacle Foods, Inc. ("Pinnacle"), and assigned to Pinnacle its license in the ARMOUR® Marks. This license remains in effect today.

17. For a period of time during ConAgra's ownership of the ARMOUR® Marks, ConAgra licensed both the ARMOUR® Marks and a family of SWIFT® marks to a single ConAgra subsidiary, Armour Swift-Eckrich, Inc., for use in connection with meats and related products and services.

18. In October 2006, ConAgra sold the Armour meat packing operations and business to Smithfield Foods, Inc. ("Smithfield"). Smithfield, in turn, assigned ownership of the ARMOUR® Marks to Plaintiff Jonmor, an intellectual property holding company that is wholly owned by Smithfield. A copy of ConAgra's assignment of the ARMOUR® Marks to Jonmor was recorded at Reel/Frame 3416/0901 at the U.S. Patent and Trademark Office.

19. On information and belief, the SWIFT® marks are currently owned by Swift Brands Company ("Swift Brands"), a wholly owned subsidiary of JBS USA that sells meat products under the SWIFT® brand. Neither JBS nor Swift Brands is affiliated in any way with Smithfield, Jonmor or Armour-Eckrich.

## Plaintiffs' Rights in the ARMOUR® Marks

20. Today, Jonmor owns multiple federal trademark registrations for a family of ARMOUR® Marks, including the ARMOUR® Word Mark (which does not claim any particular font, style, size or color) and a number of other word and design marks in the ARMOUR® family of marks. A list of Jonmor's current registrations, together with copies of those registrations, is attached hereto as Exhibit B.

21. Jonmor's registrations evidence its exclusive right to use the ARMOUR® Marks in connection with meat products and other food products and services.

22.     Jonmor licenses its ARMOUR® Marks to a select number of licensees, including, but not limited to:  (a) Pinnacle, for shelf-stable meat products; and (b) Plaintiff Armour-Eckrich (a wholly owned subsidiary of John Morrell & Co., which in turn is a wholly owned subsidiary of Smithfield) for a wide range of other categories of meat and food products.

23.     Jonmor's use of the ARMOUR® Marks, through its predecessors in interest and its licensees, commenced at least as early as 1867 and has continued without interruption since that time.

24.     In particular, Jonmor licensee Armour-Eckrich has invested substantial time, money and effort advertising and promoting products under the ARMOUR® Marks.  In just the past five years, Armour-Eckrich has invested roughly $1 million per year in advertising for ARMOUR®-branded products via television, internet, radio, print advertising, promotional and specialty items, trade shows, trade publications, and mailings sent directly to customers and potential customers.  The ARMOUR® brand has been prominently displayed in all of these types of advertising.  Armour-Eckrich also sponsors a NASCAR auto racing team and offers NASCAR-associated sweepstakes promotions, prominently featuring the ARMOUR® brand in such promotional activities.

25.     Armour-Eckrich's marketing and promotion of the ARMOUR® brand have generated considerable goodwill for the brand and led to substantial commercial success.  Indeed, in each of the past five years, its sales of ARMOUR®-branded products have exceeded $250 million.

26.     Pinnacle, another Jonmor licensee, also continues to sell shelf-stable meat products under a royalty bearing license using ARMOUR® Marks.  Pinnacle's products include Vienna sausage, potted meat, chili and beef stew.  Pinnacle's ARMOUR®-branded products are advertised at www.armour-star.com.  Pinnacle, too, invests considerable resources to promote and advertise the ARMOUR® brand including, by way of recent example, through sponsorship of another NASCAR auto racing team.

27. In order to protect its interest in its valuable ARMOUR® Marks, Jonmor implements a policing strategy in which it contracts for monitoring of newly published trademark applications, and challenges infringing and potentially infringing uses. Through its monitoring and policing efforts, Jonmor has ensured that, to the best of its knowledge, its licensees are the only entities in the United States to use an ARMOUR® mark to promote meat products and/or meat-related products or services.

28. The ARMOUR® Marks have become highly valuable and famous throughout the United States, and thus represent enormous goodwill of great value to Plaintiffs.

### Defendants' Deliberate Misappropriation of the ARMOUR® Mark

29. On or about September 25, 2013, without Jonmor's knowledge or consent, Defendant Boka Steak filed an application with the United States Patent and Trademark Office for the mark ARMOUR & SWIFT for "restaurant, bar, and catering services." The application did not state that Boka Steak was actually using the mark as of the time of filing. Instead, it stated that Boka Steak intended to use the mark in the future. A copy of this application is attached hereto as Exhibit C.

30. On or about October 10, 2013, Defendant BRG, through outside counsel, sent Jonmor a letter stating that BRG intended to open a restaurant under the name ARMOUR & SWIFT. BRG noted that the name was intended to "honor the rich Chicago history of the meat packing industry going back to the last half of the 19th century and the days of Philip Danforth Armour of Armour & Co. and Gustavus Franklin Swift of Swift & Co." A true and correct copy of BRG's letter is appended hereto as Exhibit D and incorporated herein by reference.

31. In its letter, BRG acknowledged the fame and lasting historical significance of both Philip Armour and the company he founded, Armour & Company, stating:

> These iconic businessmen [*viz.*, Armour and Swift] were among the largest players of their day in Chicago's economic landscape and contributed immensely to the food industry and voluminous nationwide meat distribution. Armour & Co. was headquartered in Chicago and at that time was the world's largest food processing and chemical manufacturing enterprise.

- 7 -

*Id.*

32.     BRG further acknowledged that "Armour is a name that still lives on in Chicago (such as Armour Square)...." and noted "Jonmor's impressive trademark portfolio of ARMOUR for foodstuffs, primarily in class 29 for meat products." *Id.*

33.     BRG asserted in its letter that consumers would not be confused by its use of ARMOUR & SWIFT to promote a Chicago steakhouse, but nevertheless sought Jonmor's "blessing" to use the ARMOUR & SWIFT name "as a proactive measure to preempt any possible ill will or conflict." *Id.*

34.     Jonmor responded promptly.  By letter dated October 23, 2013, Jonmor expressly objected to BRG's proposed name and warned that "[BRG's] proposed use would trade off of the substantial goodwill and renown of the ARMOUR name and brand and would damage the exclusive right of Jonmor and its licensee, John Morrell Food Group [the trade name for Armour-Eckrich's corporate parent] to control its reputation in the food industry, among other potential harm."  A copy of Jonmor's October 23, 2013 response letter is attached as Exhibit E.

35.     Jonmor heard nothing further from BRG after sending its October 2013 response refusing to consent to BRG's proposed use of Jonmor's ARMOUR® Marks.

36.     In July 2015, Plaintiffs discovered an advertisement in the August 2015 edition of *Chicago* magazine announcing Defendants' imminent opening in September 2015 of an "American Steakhouse" under the brand ARMOUR & SWIFT.  A copy of this advertisement is attached hereto as Exhibit F.   The advertisement included contact information for "bokagrp.com" and "bhospitalityco.com," websites operated by Defendants BRG and B Hospitality Co., respectively.

37.     According to the advertisement, Defendants' proposed restaurant will be located at 1000 W. Fulton Market, Chicago, Illinois.

38.     Defendants' advertisement includes as a background image an historical photograph of the iconic Armour & Company facility, which prominently features the ARMOUR Mark. *Compare* Exs. A and F.

39.     Upon further investigation, Plaintiffs discovered that Defendant BRG is promoting and advertising Defendants' planned ARMOUR & SWIFT restaurant on its web page at http://bokagrp.com, a screenshot of which is attached hereto as Exhibit G.

40.     Defendant B. Hospitality is similarly promoting and advertising Defendants' planned ARMOUR & SWIFT restaurant on its web page at http://www.bhospitalityco.com/, a screenshot of which is attached hereto as Exhibit H.

41.     Defendants are further promoting their planned ARMOUR & SWIFT restaurant on their Facebook pages, at www.facebook.com/armourandswift and www.facebook.com/bokarestaurantgroup, screenshots of which are attached hereto as Exhibit I.

42.     Defendants' promotional activities have led third parties to publish articles announcing the upcoming opening of an ARMOUR & SWIFT restaurant.  Representative copies of such articles are appended hereto as Exhibits J.

43.     Defendants are also currently posting advertisements on their Facebook pages, at www.facebook.com/armourandswift and www.facebook.com/bokarestaurantgroup, for job openings at their planned ARMOUR & SWIFT restaurant. *See* Exhibit I.

44.     Defendants' proposed ARMOUR & SWIFT brand is substantially similar to and creates the same commercial impression as Plaintiffs' ARMOUR® Marks.

45.     The meats and meat-related products and services that Defendants intend to offer through their ARMOUR & SWIFT-branded steakhouse restaurant are highly related to the meat and food products and services offered by Plaintiffs under the ARMOUR® Marks.

46.     The meats and meat-related products and services that Defendants intend to offer through their ARMOUR & SWIFT-branded steakhouse restaurant are to be sold and/or distributed to the same class of customer(s) as Plaintiffs' ARMOUR®-branded meat products, food products and food-related services.

47.     Defendants not only are aware of the similarity of commercial impression between their proposed ARMOUR & SWIFT brand and Plaintiffs' famous ARMOUR® brand, they are deliberately attempting to trade on the goodwill associated with Plaintiffs' ARMOUR® brand as evidenced by, among other things, Defendant BRG's written admissions of its express intent to use the ARMOUR & SWIFT name to remind consumers of Armour & Company and its history as an "iconic" Chicago meat company, as well as Defendants' use of a photograph of the Armour & Company facility (which prominently displays the ARMOUR® Mark).

48.     Plaintiffs have neither authorized nor consented to Defendants' use of the ARMOUR® Mark.  On the contrary, Defendants expressly sought – and were denied – such consent.

49.     On information and belief, Defendants never approached the current owners of the SWIFT® family of marks to seek their consent to use the SWIFT® brand together with the ARMOUR® brand on a Chicago steakhouse restaurant.

## COUNT I

### Federal Trademark Infringement (15 U.S.C. §1114)

50.     Plaintiffs restate and incorporate herein by reference the averments set forth in paragraphs 1 through 49 above.

51.     Defendants have infringed Plaintiffs' rights in the ARMOUR® Marks by, among other things, using in commerce the confusingly similar ARMOUR & SWIFT mark on their advertising materials, interactive websites and Facebook accounts to promote a Chicago steakhouse that will feature meats and meat-related products.

52.     Defendants' proposed use of the ARMOUR & SWIFT brand to promote a Chicago steakhouse is confusingly similar to Plaintiffs' use of the ARMOUR® Marks for meats and other food products.  Such use already has caused and/or is likely to cause confusion, mistake and/or deception among members of the relevant consuming public as to the origin or affiliation of Defendants' services and has deceived, and/or is likely to deceive, the public into believing that the services promoted, sold and/or distributed by Defendants emanate from, or are associated with, Plaintiffs and Plaintiffs' goods, all to the damage and detriment of Plaintiffs' reputation, goodwill and sales.

53.     Defendants' continuing actions have been willful, deliberate, undertaken in bad faith and intended to benefit Defendants at Plaintiffs' expense.

54.     Defendants' actions constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

55.     Defendants' wrongful conduct has caused and/or will cause irreparable harm to Plaintiffs if not enjoined.

## COUNT II

## Federal Unfair Competition (15 U.S.C. § 1125(a))

56.     Plaintiffs restate and incorporate herein by reference the averments set forth in paragraphs 1 through 55 above as though fully set forth herein.

57.     By misappropriating and using the confusingly similar mark ARMOUR & SWIFT brand, Defendants have misrepresented to the public that their proposed Chicago steakhouse restaurant, and the meats, meat-related products and restaurant services to be associated therewith, originate from, are connected with, authorized by, or are otherwise associated with Plaintiffs, thereby creating actual confusion and/or a likelihood of confusion as to the source or sponsorship of Defendants' restaurant services.

58.     Defendants' acts have been willful, deliberate, undertaken in bad faith and intended to benefit Defendants at Plaintiffs' expense.

59.     Defendants' actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60.     Defendants' wrongful conduct has caused and/or will cause irreparable harm to Plaintiffs if not enjoined.

## COUNT III

### Federal False Designation Of Origin (15 U.S.C. § 1125(a))

61.     Plaintiffs restate and incorporate herein by reference the averments set forth in paragraphs 1 through 60 above as though fully set forth herein.

62.     By misappropriating and using the confusingly similar ARMOUR & SWIFT brand, Defendants have falsely designated that their Chicago steakhouse, and the meats, meat-related food products and restaurant services associated therewith, originate from, are endorsed by, are connected with, authorized by, or otherwise associated with Plaintiffs, who are the owners and authorized licensees of the ARMOUR® Marks.

63.      Defendants' acts have been willful, deliberate, undertaken in bad faith and intended to benefit Defendants at Plaintiffs' expense.

64.     Defendants' acts constitute a false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

65.     Defendants' wrongful conduct has caused and/or will cause irreparable harm to Plaintiffs if not enjoined.

## COUNT IV

## Federal Trademark Dilution (15 U.S.C. § 1125(c))

66.     Plaintiffs restate and incorporate herein by reference the averments set forth in paragraphs 1 through 65 above as though fully set forth herein.

67.     The ARMOUR® Marks generally, and/or the ARMOUR® Word Mark in particular, have become famous as a result of their distinctiveness; the duration and extent of their use; the duration and extent of the advertising and publicity that utilized them; the geographic extent of the trading area in which they are used; the channels of trade for the goods with which they are used; the degree of recognition of the ARMOUR® Marks in the trading areas and channels of trade in which the marks are used; and the trademark registrations of the ARMOUR® Marks for goods on the Principal Register.

68.     Defendants have diluted the reputation and value of Plaintiffs' famous ARMOUR® Marks by advertising, selling and/or distributing highly related services of inferior and/or unknown grade and quality to the same consumers in the same trade areas under the ARMOUR & SWIFT brand, thereby tarnishing Plaintiffs' ARMOUR® Marks and blurring Plaintiffs' ARMOUR®-branded products and services with those offered by Defendants, all in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

69.     Defendants' acts have been willful, deliberate, undertaken in bad faith and intended to benefit Defendants at Plaintiffs' expense.

70.     Defendants' wrongful conduct has caused and/or will cause irreparable harm to Plaintiffs if not enjoined.

## COUNT V

### Illinois Trademark Dilution (765 Ill. Comp. Stat. § 1036/65)

71.     Plaintiffs restate and incorporate herein by reference the averments set forth in paragraphs 1 through 70 above as though fully set forth herein.

72.     The ARMOUR® Marks generally, and/or the ARMOUR® Word Mark in particular, have become famous as a result of their distinctiveness; the duration and extent of their use, including their use throughout the State of Illinois; the duration and extent of the advertising and publicity that utilized them; the geographic extent of the trading area in which they are used; the channels of trade for the goods with which they are used; the degree of recognition of the ARMOUR® Marks in the trading areas and channels of trade in which the marks are used; and the trademark registrations of the ARMOUR® Marks for goods on the Principal Register.

73.     The actions of Defendants, as described above, began well after Plaintiffs' ARMOUR® Marks had become famous.  Defendants have diluted the reputation and value of Plaintiffs' famous ARMOUR® Marks by advertising, selling and/or distributing highly related services of inferior and/or unknown grade and quality to the same consumers in the same trade areas under the ARMOUR & SWIFT brand, thereby tarnishing Plaintiffs' ARMOUR® Marks and blurring Plaintiffs' ARMOUR®-branded products and services with those offered by Defendants, all in violation of 765 Ill. Comp. Stat. § 1036/65.

74.     Defendants' acts have been willful, deliberate, undertaken in bad faith and intended to benefit Defendants at Plaintiffs' expense.

75.     Defendants' wrongful conduct has caused and/or will cause irreparable harm to Plaintiffs if not enjoined.

## COUNT VI

### Illinois Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. §§ 510/1 to 510/7)

76.     Plaintiffs restate and incorporate herein by reference the averments set forth in paragraphs 1 through 75 above as though fully set forth herein.

77.     Defendants' use of the ARMOUR & SWIFT brand on their planned Chicago steakhouse, and the meats, meat-related food products and restaurant services associated therewith, constitutes unfair trade practices in violation of 815 Ill. Comp. Stat. §§ 510/1 to 510/7 in that Defendants' conduct has caused and/or is likely to cause confusion, mistake and/or deception among members of the relevant consuming public as to the origin or affiliation of Defendants' goods and services and has deceived, and/or is likely to deceive, the public into believing that the goods and services promoted, sold and/or distributed by Defendants emanate from, or are associated with, Plaintiffs and their ARMOUR®-branded goods and services, all to the damage and detriment of Plaintiffs' reputation, goodwill and sales.

78.     Because Defendants had actual and constructive notice of Plaintiffs' prior use of and rights in their ARMOUR® Marks before Defendants began using the ARMOUR & SWIFT brand on their planned Chicago steakhouse and the meat-related goods and services associated therewith, Defendants' acts have been willful, deliberate, undertaken in bad faith and intended to benefit Defendants at Plaintiffs' expense.

79.     Defendants' actions constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. §§ 510/1 to 510/7.

80.     Defendants' wrongful conduct has caused and/or will cause irreparable harm to Plaintiffs if not enjoined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

a)      Temporarily, preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, subsidiaries, divisions and all persons and entities in active concert or participation therewith from using ARMOUR & SWIFT, or any mark confusingly similar to Plaintiffs' ARMOUR$^{®}$ Marks, portions thereof, or any colorable imitative or confusingly similar designation or mark, either alone or in combination with other words, symbols, components, or the like, as a service mark, trademark, trade name component, domain name or otherwise, to market, advertise, identify, sell, or distribute Defendants' products and related services in a manner which is likely to cause consumer confusion between Defendants and Plaintiffs;

b)      Directing Defendants to deliver up for destruction, within five days of the date of the entry of the Court's entry of a permanent injunction, all articles, displays, advertisements, brochures, catalogues, labels, packaging, or any other material in their possession or control or in the possession or control of their agents and all those in active concert or participation with Defendants, which bear any of Plaintiffs' ARMOUR® Marks, or any mark confusingly similar thereto, or imitative thereof, in connection with meat products, meat-related food products and/or meat-related restaurant services;

c)      Directing Defendants to expressly abandon with the representative administrative body any and all pending trademark applications to register and/or registrations for the ARMOUR & SWIFT mark and any other mark that is identical or confusingly similar to any of Plaintiffs' ARMOUR® Marks, including but not limited to U.S. Trademark Application Serial No. 86/075,010;

d)      Granting Plaintiffs an accounting of all gains, profits and advantages derived by Defendants from the unlawful acts complained of herein;

e)      Awarding Plaintiffs compensatory damages in an amount to be proved at trial;

f)       Awarding Plaintiffs damages sufficient to compensate for the advertising and/or other expenses necessary to dispel any actual and/or likely confusion caused by Defendants' unlawful acts;

g)       Awarding Plaintiffs their costs and reasonable attorneys' fees;

h)       Directing Defendants to file with this Court and serve on Plaintiffs within thirty (30) days after entry of a permanent injunction order a report in writing under oath setting forth in detail the manner and form in which they have complied with the injunction;

i)       Awarding Plaintiffs a sum equal to three (3) times the amount of Plaintiffs' actual damages because of the deliberate and willful nature of Defendants' acts; and

j)       Granting Plaintiffs any other relief that the Court may deem to be just and appropriate.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury of any and all issues so triable.

Dated: July 29, 2015           REED SMITH LLP

By: /s Keyonn L. Pope
Keyonn L. Pope (IL Bar No. 6301921)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
Telephone: (312) 207.1000
Facsimile: (312) 207.6400
kpope@reedsmith.com

OF COUNSEL:

Tracy Zurzolo Quinn
Carl H. Pierce
REED SMITH LLP
Three Logan Square
1717 Arch Street Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851.8100
Facsimile: (215) 851.1420
tquinn@reedsmith.com
cpierce@reedsmith.com

Counsel for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| JONMOR INVESTMENTS, INC. and ARMOUR-ECKRICH MEATS LLC, | : : : : | |
| Plaintiffs, | : : | Civil Action No. _____ |
| v. | : : | JURY TRIAL DEMANDED |
| BOKA RESTAURANT GROUP, LLC, B. HOSPITALITY CO. and BOKA STEAK, LLC., | : : : : | |
| Defendants. | : : | |

## VERIFICATION

Charles Gitkin, of full age, hereby declares as follows:

1.      I am Senior Vice President of Marketing, Armour-Eckrich Meats, LLC ("Armour-Eckrich").

2.      I have read the Verified Complaint in this matter and state that the factual allegations contained therein, insofar as they refer or relate to Armour-Eckrich and/or its allegations against Defendants, are true to the best of my knowledge, information and belief, based upon, among other things, my personal knowledge of the facts and circumstances.

3.      I hereby certify that the foregoing statements made by me are true. I have made these statements subject to penalty of perjury under the laws of the United States.

_____                    Dated: July 29, 2015

Charles Gitkin

- 1 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| **JONMOR INVESTMENTS, INC.**<br>**and ARMOUR-ECKRICH MEATS**<br>**LLC,** | : | |
| | : | |
| **Plaintiffs,** | : | **Civil Action No.** _____ |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| **BOKA RESTAURANT GROUP, LLC,**<br>**B. HOSPITALITY CO. and**<br>**BOKA STEAK, LLC.,** | : | |
| | : | |
| **Defendants.** | : | |

## VERIFICATION

I, Jeffrey A. Porter, Esquire, of full age, hereby declare as follows:

1.      I am President and General Counsel, Jonmor Investments, Inc. ("Jonmor").

2.      I have read the Verified Complaint in this matter and state that the factual allegations contained therein, insofar as they refer or relate to Jonmor and/or its allegations against Defendants, are true to the best of my knowledge, information and belief, based upon, among other things, my personal knowledge of the facts and circumstances.

3.      I hereby certify that the foregoing statements made by me are true. I have made these statements subject to penalty of perjury under the laws of the United States.

_____
Jeffrey A. Porter

Dated: July 28, 2015

- 1 -